208 N.J. Super. 40 (1986)
504 A.2d 1200
DEBRA PIERZGA, PLAINTIFF-APPELLANT,
v.
THE OHIO CASUALTY GROUP OF INSURANCE COMPANIES, D/B/A OHIO CASUALTY INSURANCE COMPANY, DEFENDANT-RESPONDENT, AND W.R. GRACE & COMPANY D/B/A CHANNEL HOME CENTERS, INDIVIDUALLY AND JOINTLY, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued January 13, 1986.
Decided February 3, 1986.
*41 Before Judges MORTON I. GREENBERG, J.H. COLEMAN and HAVEY.
John R. Vivian, Jr., admitted pro hac vice, argued the cause for appellant (Michael J. Perrucci and William E. Mandry, attorneys).
Elliot Abrutyn argued the cause for respondent (Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, attorneys; Elliot Abrutyn and Robert John Aste, on the brief).
The opinion of the court was delivered by MORTON I. GREENBERG, P.J.A.D.
This matter comes on before this court on appeal from decisions made on a motion for summary judgment and at a subsequent nonjury trial in an action where once again a person entitled to personal injury protection benefits (PIP) was denied these benefits and has sought on various theories to recover damages in excess of the amount of the benefits and interest due thereon as provided in the New Jersey Automobile Reparation Reform Act (No Fault Act), N.J.S.A. 39:6A-1 et seq. In this case, except for an award of counsel fees under court rule, plaintiff was unsuccessful in exceeding the statutory elements of recovery, a result consistent with the treatment of these types of claims made by other persons in prior litigation. The appeal is notable in that plaintiff forthrightly concedes in the light of Milcarek v. Nationwide Ins. Co., 190 N.J. Super. 358 (App.Div. 1982), her recovery is predicated on "a change in the present state of the law concerning the non-availability of compensatory and punitive damages to persons such as Appellant," *42 a concession that may be too broad as here, unlike the plaintiff in Milcarek, plaintiff relies on the Consumer Fraud Act, N.J.S.A. 56:8-1 et seq. Nevertheless, while we are troubled by the conduct of the insurance carrier in this case, we decline plaintiff's invitation to disregard established precedent as we think it would be inappropriate for us to do so, and are satisfied that in any event it would be unwise to allow plaintiff a recovery beyond her substantial remedies under the No Fault Act and court rules.
This action is derived from the circumstance that plaintiff, Debra Pierzga, was severely injured in an accident on October 24, 1981 while a passenger in an automobile owned and operated by Timothy Minchin and insured by defendant Ohio Casualty Group of Insurance Companies, and consequently incurred substantial expenses qualifying for PIP benefits. Inasmuch as plaintiff was not entitled to PIP benefits under any other policy, her source for such benefits was from Ohio which, of course, was promptly notified of the accident. While her husband had medical payments insurance administered or issued by Aetna Insurance Company through his employer, Channel Home Centers, which covered plaintiff for certain expenses she incurred, this coverage did not entitle Ohio to collateral source deductions under N.J.S.A. 39:6A-6.
It is unnecessary to set out the facts of this case at length as we are deciding it on a legal basis. Suffice it to say that after the accident plaintiff made efforts to recover from both Aetna and Ohio. Ohio attempted to avoid responsibility. It investigated to ascertain whether plaintiff or her husband owned an automobile insured with a policy with PIP benefits, undoubtedly a reasonable thing to do. But it not so reasonably attempted to place the responsibility for the bills on Aetna. Further, by any standard its conduct was dilatory and reflective of its intention to avoid its responsibilities. Plaintiff was represented by an attorney who attempted unsuccessfully to get Ohio to meet its obligations and the record reflects his understandable frustration in the situation.
*43 Eventually plaintiff in April 1983 filed a complaint against Ohio and W.R. Grace & Company which operates Channel. Inasmuch as the claim against Channel was settled the complaint against it was dismissed and need not be further described. Plaintiff sought a recovery from Ohio for medical expenses, income continuation benefits, essential services benefits, punitive damages for its willful and wrongful refusal to pay her PIP benefits, negligence, conspiracy and breach of an agreement to pay for home health care. In addition, plaintiff sought compensatory and punitive damages under the Insurance Trade Practices Act, N.J.S.A. 17:29B-4(9) (also called the Unfair Claims Settlement Practices Act), and treble damages under N.J.S.A. 56:8-1 et seq., the Consumer Fraud Act.
On February 10, 1984 plaintiff obtained a partial summary judgment against Ohio ordering it to pay income continuation and essential service benefits, accrued medical expenses, accrued interest and attorney's fees. On May 23, 1984 a consent order was entered reflecting the terms of the summary judgment and requiring payments to plaintiff of the amounts due for PIP benefits.
Subsequently Ohio moved for an order for summary judgment and sought to reopen the summary judgment rendered against it. The court would not reopen the prior summary judgment but did grant Ohio summary judgment on June 4, 1984 on all remaining issues except for plaintiff's claim under the Consumer Fraud Act. At the ensuing nonjury trial a different judge found that the Consumer Fraud Act as a matter of law did not apply in this case and that even if it could apply there was insufficient evidence to support a judgment against Ohio. The trial judge on December 24, 1984 signed an order in favor of Ohio reflecting this decision. Plaintiff appeals, asserting that the pretrial dismissals of her claims for punitive damages and for damages under the Insurance Trade Practices Act, and the dismissal at trial of the claim under the Consumer Fraud Act were erroneous. Plaintiff, however, makes no claim *44 on this appeal that PIP benefits due under the No Fault Act have not been made.
As plaintiff recognizes, the resolution of the issues on this appeal should start with a discussion of Milcarek v. Nationwide Ins. Co., supra, 190 N.J. Super. at 358. We there held that there is no right of recovery of punitive damages against an insurance carrier which wrongfully withholds PIP benefits. The plaintiff in Milcarek recognized that ordinarily punitive damages are not recoverable against an insurance carrier for nonpayment of benefits but sought to establish that the insurance company had a special relationship which imposed a fiduciary duty on it with respect to the plaintiff, the breach of which could give rise to a claim for punitive damages. We rejected the contention holding:
[O]nce defendant was put on notice of the accident and its PIP responsibility to plaintiff, she in effect became `its direct insured vis-a-vis the payment of PIP benefits.' Smelkinson v. Ethel & Mac Corp., 178 N.J. Super. 465, 472 (App. Div. 1981). As a result, the no-fault law imposed an affirmative duty upon defendant to deal fairly with plaintiff. Ibid. However, in our view, this does not mean that defendant was acting as agent for plaintiff in determining whether her second accident, the fall, entitled her to PIP benefits. We do not think defendant owed a fiduciary duty to plaintiff in this type of situation for purposes of falling within the special relationship exception to the general rule prohibiting the award of punitive damages in contract cases. Nor does this case involve such an aggravated set of circumstances as to call for departure from the general rule. [190 N.J. Super. at 364]
We also indicated that in view of interest being due for overdue payments (N.J.S.A. 39:6A-5(c)) and the possibility for award of attorney's fees in no-fault actions (R. 4:42-9(a)(6)), insurance companies would be deterred from unreasonably withholding benefits. Thus we did not think that it would be necessary or wise to subject carriers to punitive damages. 190 N.J. Super. at 367-368. Milcarek has been followed in Kubiak v. Allstate Ins. Co., 198 N.J. Super. 115 (App.Div. 1984) (dealing with PIP benefits) and Garden State Comm. Hosp. v. Watson, 191 N.J. Super. 225 (App.Div. 1983) (concerning health plan benefits). See also Ellmex Const. Co., Inc. v. Republic Ins. Co., 202 N.J. Super. 195 (App.Div. 1985).
*45 Plaintiff seeks to avoid Milcarek by asserting that Ohio's bad faith shows the Milcarek court was incorrect in thinking that the existing remedies are sufficient to ensure prompt and efficient payment and by pointing out that other jurisdictions allow punitive damages against insurance companies for willful and wrongful denials of benefits. Further, plaintiff asserts this case is unique on its facts as it involves a willful and wanton decision to ignore the law rather than a mere oversight.
We reject these contentions. Firstly, we have no doubt that no matter how severe the penalties imposed on insurance companies for failure to make PIP payments, there will be cases in which a court in retrospect finds the companies were willful and wanton in refusing payment. Secondly, assessing penalties which are too severe may induce companies to pay claims which they should reject, a practice obviously detrimental to the premium-paying public. Thirdly, the costs of any judgment will be passed on to the public. While we recognize that the cost of any judgment or settlement paid by an insurance company will be reflected in the cost of insurance, it is one thing to pass on costs to pay for a plaintiff's actual damages but something else again to pass on the costs of what would be a windfall to the person recovering the judgment. Fourthly, we note that the Legislature has provided an administrative remedy under the Insurance Trade Practices Act, N.J.S.A. 17:29B-1 et seq., for unfair claims settlement practices. N.J.S.A. 17:29B-4(9). Fifthly, we note that under N.J.S.A. 39:6A-13(g) a procedure for expediting resolution of PIP disputes is provided. See Kubiak v. Allstate Ins. Co., supra, 198 N.J. Super. at 119; see also Manetti v. Prudential Property & Cas. Ins. Co., 196 N.J. Super. 317 (App.Div. 1984). Finally, we observe that by allowing punitive damage claims the court would encourage litigation, a policy directly contrary to that of the No-Fault Act. Fitzgerald v. Wright, 155 N.J. Super. 494, 497-498 (App.Div. 1978).
*46 To avoid Milcarek plaintiff has made a claim under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, a statute not considered by us in Milcarek. That act provides in part:
The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.... [N.J.S.A. 56:8-2]
Plaintiff asserts that Ohio's conduct was a false promise and a deceptive commercial practice, a charge rejected by the trial court on the factual basis that the matter was simply a no-pay decision by an insurance claims manager and on the legal basis that the Consumer Fraud Act is not applicable in this case. We see no reason to review the judge's factual findings (and thus we have not set out the facts at length) as we are convinced that he properly dismissed the claim for the legal reason that the act is inapplicable. Obviously, it would be anomalous to hold that the Consumer Fraud Act which provides for treble damages, N.J.S.A. 56:8-19, clearly a punitive remedy, could be applicable as punitive damages are barred by Milcarek.
Further, in Daaleman v. Elizabethtown Gas Company, 77 N.J. 267 (1978), the Supreme Court held that the Consumer Fraud Act would not apply in a case against a privately owned public utility supplying natural gas charged with having manipulated and overstated its cost of gas and then reflecting this overstatement in billing its customers. The court indicated that in the Consumer Fraud Act the Legislature was concerned with protecting the public from sharp practices and dealings in the marketing of merchandise and real estate, a protection not needed in the case of a utility under the regulatory jurisdiction of the Board of Public Utility Commissioners which could review billing adjustments. Further, inasmuch as the Division of Consumer Protection administers the Consumer Fraud Act, if the Act applied to utility billing practices two state agencies would have concurrent jurisdiction over billing, a situation *47 which could result in conflicting rulings. The court also perceived that an award of treble damages against a public utility would be inappropriate as in the long run the public users of the utility service would in effect pay the award when they were billed. 77 N.J. at 271-272.
Considerations similar to those in Daaleman are applicable here. This case does not involve a case of a consumer being victimized by unscrupulous or fraudulent marketing practices. Further, the insurance industry is already heavily regulated by the Department of Insurance. It thus appears that exclusive regulatory jurisdiction of insurance companies, at least with respect to the payment of claims, is within the Department of Insurance. See N.J.S.A. Title 17, Chapter 17 et seq., in general and N.J.S.A. 17:29B-1 et seq. in particular. Finally, Daaleman is germane here because if treble damages are awarded against insurance companies, the cost will be passed on to the public.[1]
Plaintiff's last ground of appeal asserts that her complaint, insofar as it asserted a cause of action under the Insurance Trade Practices Act, N.J.S.A. 17:29B-1 et seq., should not have been dismissed. We disagree as that statute applies to wrongs to the public rather than any individual and violations of the statute do not create individual or private causes of action. Milcarek v. Nationwide Ins. Co., supra, 190 N.J. Super. at 368; Retail Clerks, etc., Local No. 1049 v. Cont'l *48 Cas. Co., 71 N.J. Super. 221 (App.Div. 1961); see also Trustees of Local 478 Pension Fund v. Pirozzi, 198 N.J. Super. 318 (App. Div. 1984), affirming 198 N.J. Super. 297 (Law Div. 1983).[2]
Affirmed.
NOTES
[1] In plaintiff's brief she contends that the trial judge erred in denying a jury trial on the Consumer Fraud Act claim. Obviously this point is moot as we are holding that she had no cause for action on the claim as a matter of law. Thus she was entitled to no trial, jury or nonjury, on this issue. We further point out that there is no right to a jury trial in an action for PIP benefits. Manetti v. Prudential Property & Cas. Ins. Co., supra, 196 N.J. Super. at 317. She also claims that in view of the denial of summary judgment on Ohio's pretrial motion to dismiss the count for consumer fraud the trial judge as a matter of law was bound to hold that the Act could apply in an appropriate case. This point is also moot as certainly the pretrial decision is not binding on us and it cannot reasonably be suggested that Ohio, having prevailed at trial, was required to cross-appeal from the denial of summary judgment to preserve its right to assert the inapplicability of the Consumer Fraud Act.
[2] In her brief plaintiff cited the Unfair Claims Settlement Practices Act, N.J.S.A. 17B:30-13.1 on this point. However, at oral argument she agreed that this section was inapplicable as it deals with life and health insurance and annuities and the correct section was N.J.S.A. 17:29B-4(9) as set forth in the complaint.